UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TOMMY LEE FRYMAN,

          Petitioner,

    v.

W.A. DUNCAN, Warden, et al.,

          Respondents.

No. C 05-00156 MHP

**MEMORANDUM & ORDER**

**Re: Petition for Writ of Habeas Corpus**

Petitioner Tommy Lee Fryman ("Fryman"), a California prisoner now incarcerated at the Salinas Valley State Prison, has filed a writ of habeas corpus pursuant to 28 U.S.C. section 2254. He pled guilty in August 1999 to possession of 1.2 grams of cocaine and was sentenced in October 1999 under California's Three Strikes law to 25-years-to-life in prison. Fryman raises two constitutional issues in his petition. First, Fryman argues that denying him the benefit of Proposition 36 while affording it to others violates the Equal Protection Clause of the Fourteenth Amendment. Proposition 36, which mandates drug treatment and probation in lieu of incarceration, was passed by California voters in November 2000 while Fryman's conviction was pending on direct appeal. Second, Fryman argues that his sentence of 25-years-to life for possession of 1.2 grams of cocaine violates the Eighth Amendment's prohibition against cruel and unusual punishment.

BACKGROUND

On October 31, 1998, an officer of the San Jose Police Department proceeded to the area of Hopkins and Alfred Streets in San Jose, based on information passed on by another officer that two black people would be involved in a drug transaction. CT 193. In the area, the officer talked to Fryman and a female codefendant, Antoinette Long, and observed symptoms that led the officer to

suspect both individuals of being under the influence of a drug. CT 9–10.  The officer also observed two baggies fall out of Long's pocket and land between Long and Fryman.  CT 11.  The officer retrieved the baggies and saw inside them what she believed to be drug residue.  Id.  She also found a white rock located on the ground between the two defendants, which later tested positive for cocaine.  CT 12–14.  Based on this evidence, the officer and her partner arrested Fryman and Long.

On June 4, 1999, a jury in Santa Clara County convicted Fryman of being under the influence of cocaine, a misdemeanor, but deadlocked on the possession with intent to sell charge.  See Cal. Health & Safety Code § 11550(A).  After the court declared a mistrial, Fryman pled guilty on August 4, 1999, to a drug possession charge without intent to sell.  CT 273.  He also admitted prior felony convictions alleged as strikes under California's Three Strikes law, a recidivist statute that enhances sentencing for repeat offenders.  See Cal. Penal Code §§ 667, 1170.12.  On October 27, 1999, the trial court sentenced Fryman to a prison term of 25-years-to-life.

Fryman appealed his conviction on October 27, 1999.  On November 7, 2000, approximately one year after Fryman was convicted and sentenced and while his appeal was still pending, California voters passed Proposition 36, an initiative entitled the "Substance Abuse and Crime Prevention Act of 2000."  This proposition amended state law by declaring that an eligible defendant "convicted of a nonviolent drug possession offense *shall* receive probation.  As a condition of probation, the court *shall* require participation in and completion of an appropriate drug treatment program."  Cal. Penal Code § 1210.1(a) (emphases added).  Proposition 36 also provided that "[a] court may not impose incarceration as an additional condition of probation."  Id.  In uncodified Section 8, entitled "Effective Date," the initiative stated, "Except as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall apply prospectively."  Prop. 36, § 8, reprinted at 51 West's Ann. Pen. Code, following § 1210.  It appears that notwithstanding California's Three Strikes law, Fryman was eligible to be sentenced under Proposition 36 and had that been done, he would have received mandatory drug treatment and probation in lieu of his sentence of 25-years-to-life imprisonment.

2

1    Following the passage of Proposition 36, Fryman filed a supplemental appellate brief, arguing that he was entitled to benefit from Proposition 36 and that to deny him the benefits while affording it to others violated the Equal Protection Clause of the Fourteenth Amendment. On April 30, 2002, the California Court of Appeal agreed with Fryman and remanded the matter for resentencing in accordance with Proposition 36. Resp. Exh. F, People v. Fryman (Fryman I), 97 Cal. App. 4th 1315, 119 Cal. Rptr. 2d 557 (2002) (superceded and depublished). The California Court of Appeal reasoned, "the distinction drawn by the Act's prospective-only provision between those convicted before July 1, 2001, whose judgments are not yet final, and those convicted after that date affected defendant's fundamental interest in liberty." Fryman I, 119 Cal. Rptr. at 561. Applying strict scrutiny review, the court concluded that "the distinction is not necessary to further a compelling state interest." Id. Accordingly, "the drastic difference in treatment of the two groups of defendants—here the difference between incarceration for life and release on probation—violates the constitutional guarantee of equal protection under the law." Id. The state petitioned for review of the appellate court's decision, and the California Supreme Court held Fryman's case in abeyance pending a decision in another case on the same issue, People v. Floyd, 31 Cal. 4th 179 (2003).

   The defendant in Floyd, very much like Fryman in this case, had been sentenced as a repeat offender under California's Three Strikes law to 25-years-to-life for possessing 0.25 grams of cocaine. Floyd, 31 Cal. 4th at 183. The defendant in Floyd had been sentenced on November 9, 2000, two days after California voters passed Proposition 36 on November 7, 2000, but prior to the proposition's effective date of July 1, 2001. Id. In Floyd, the California Supreme Court determined as a matter of statutory interpretation that under uncodified Section 8, Proposition 36 was to be applied prospectively to those convicted after the proposition's effective date, and the court rejected defendant's contention that "conviction" was properly understood to mean a conviction that was final. Id. at 184–88. Moreover, the California Supreme Court held that prospective application of Proposition 36, while it created two classes of defendants depending on the timing of their convictions, did not violate the Equal Protection Clause of the Fourteenth Amendment. Id. at 188–91.

3

In light of Floyd, the Court of Appeal affirmed Fryman's conviction, and at the same time rejected Fryman's other arguments, including his claim under the Eighth Amendment for cruel and unusual punishment. Resp. Exh. L, People v. Fryman (Fryman II), 2004 WL 49705 (Cal. App. 6 Dist.) (2004). Having exhausted his direct appeals, Fryman's conviction became final on January 9, 2004.

On January 6, 2005, Fryman filed a pro se petition for habeas corpus relief in this court pursuant to 28 U.S.C. section 2254. The California Attorney General filed a traverse on March 3, 2006. On July 12, 2006, this court ordered appointment of habeas counsel for Fryman and granted leave to amend the petition. The issues having been fully briefed, Fryman's petition is now ready for review by this court.

LEGAL STANDARD

This court is required to analyze state habeas corpus claims under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that this court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has interpreted AEDPA to require a district court to uphold the state court's decision unless that decision was an objectively unreasonable application of a clearly established federal law. Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

JURISDICTION AND VENUE

4

1   This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C.
2   section 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged
3   conviction occurred in Santa Clara County, California, within this judicial district.  28 U.S.C. §§ 84,
4   2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).

Rule 7(b) of the Rules Governing Habeas Corpus Cases Under Section 2254 permits a federal district court in a habeas proceeding to expand the existing record to include "documents, exhibits, and answers under oath, if so directed, to written interrogatories propounded by the judge.  Affidavits may be submitted and considered as part of the record."  The Supreme Court "ha[s] never held that presentation of additional facts to the district court, pursuant to that court's direction, evades the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts."  See Vasquez v. Hillery, 474 U.S. 254, 257–58 (1986) (holding habeas petitioner's obligation to exhaust state remedies before seeking collateral relief in federal court was not circumvented by the fact that the federal district court directed parties to present supplemental evidence).

Respondents contend that the new exhibits entered into the record by Fryman renders his claims unexhausted by placing them in a "significantly different posture" from the claims as presented in state court.  This court finds, however, that Fryman's claims are exhausted because the new exhibits "d[o] not fundamentally alter the legal claim[s] already considered by the state courts."  Vasquez, 474 U.S. at 260.

## DISCUSSION

5

1    Fryman asserts two claims in his petition for writ of habeas corpus.  First, Fryman argues that
2 denying him the benefits of Proposition 36 violates the Equal Protection Clause of the Fourteenth
3 Amendment.  Second, Fryman contends that his 25-years-to-life sentence for possession of 1.2
4 grams of cocaine violates the Eighth Amendment's prohibition against cruel and unusual
5 punishment.  The court addresses each claim below.

I.      Fourteenth Amendment Equal Protection

On November 7, 2000, while Fryman's conviction was pending on direct appeal, California voters passed Proposition 36.  Among other purposes, the proposition was designed to "halt wasteful expenditure of hundreds of millions of dollars each year on the incarceration—and re-incarceration—of nonviolent drug users who would be better served by community-based treatment."  Prop. 36, § 3(b), reprinted at 51 West's Ann. Pen. Code, following § 1210.  Proposition 36 amended state law by requiring that an eligible defendant "convicted of a nonviolent drug possession offense *shall* receive probation.  As a condition of probation, the court *shall* require participation in and completion of an appropriate drug treatment program."  Cal. Penal Code § 1210.1(a) (emphases added).  Proposition 36 also provided that "[a] court may not impose incarceration as an additional condition of probation."  Id.

Proposition 36 also contained a savings clause.  In uncodified Section 8, entitled "Effective Date," the initiative stated, "Except as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively."  Prop. 36, § 8, reprinted at 51 West's Ann. Pen. Code, following § 1210.  By its terms, Proposition 36 was to apply prospectively from July 1, 2001, but the initiative itself was silent as to the appropriate event or occurrence that would serve as the point of reference for distinguishing prospective from retrospective application.

In People v. Floyd, 31 Cal. 4th 179 (2003), the California Supreme Court interpreted Section 8 to mean that Proposition 36 would only apply to defendants *convicted* after July 1, 2001, and moreover, the court rejected the contention that "conviction" was  properly understood to mean a conviction that was final.  In concluding that this construction of the statute reflected the intention of

6

1   the voters, the Supreme Court found support in the plain language of Section 8 that the proposition
2   apply prospectively; in the fact that the proposition's effective date was postponed until months after
3   it was adopted by voters, when ordinarily the proposition would have taken effect the day after it
4   was approved; and in the fact that ballot pamphlets distributed to voters explained that the initiative
5   would apply to nonviolent drug offenders "convicted" after July 1, 2001. Id. at 184–88.

6         As interpreted by Floyd, Section 8 of Proposition 36 creates two classes of nonviolent drug
7   offenders—those convicted before July 1, 2001, but whose judgments are not yet final, and those
8   convicted after July 1, 2001. Fryman was convicted and sentenced in 1999, but his conviction was
9   not final until January 2004 when he exhausted his direct appeals. As a result of this classification,
10  nonviolent drug offenders like Fryman are subject to indeterminate life sentences, while other
11  offenders are granted probation and community-based treatment. These two groups of defendants
12  are similarly situated, except for the happenstance that, irrespective of the date of their commission
13  of the offense, one group of defendants resolved their cases earlier than the other. Fryman contends
14  that this difference in treatment violates the Equal Protection Clause and that the California Supreme
15  Court's decision in Floyd involves an unreasonable application of established federal precedent.

16        To be sure, absent a showing of fundamental unfairness which the petitioner has not made,
17  this court does not sit in judgment on the state court's interpretation of Proposition 36 and the
18  savings clause found in Section 8. That the phrase "conviction" might have three different meanings
19  under California case law, including (1) the return of a guilty verdict, (2) the imposition of sentence,
20  and (3) finality on appeal[1], and that the state Supreme Court rejected the contention that
21  "conviction" under Proposition 36 should mean finality on appeal, are issues of state statutory
22  construction not cognizable under federal habeas review. The only issue cognizable under federal
23  habeas review is whether petitioner's sentence is constitutionally impermissible because it violates
24  equal protection. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (it is not the province of a federal
25  habeas court to reexamine state-court determinations on state-law questions). Moreover, when
26  viewed through the lens of AEDPA, this court cannot grant the habeas petition unless the state
27  court's application of equal protection precedent was objectively unreasonable.
28

7

1 　　　　　The Fourteenth Amendment's Equal Protection Clause provides that no state shall deny to 2 any person "the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection 3 Clause ensures that "all persons similarly situated should be treated alike." City of Cleburne v. 4 Cleburne Living Ctr., 473 U.S. 432, 439 (1985). When state action "operates to the disadvantage of 5 some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the 6 Constitution," that action must be analyzed under strict judicial scrutiny. San Antonio Indep. Sch. 7 Dist. v. Rodriguez, 411 U.S. 1, 17 (1973). When neither a suspect class nor a fundamental right is 8 implicated, the appropriate standard of analysis is rational basis review, which requires only that 9 disparate treatment be "rationally related to legitimate government interests." Schweiker v. Wilson, 10 450 U.S. 221, 230 (1981). The rational basis standard presents a significant obstacle to an equal 11 protection claim, as "legislative solutions must be respected if the 'distinctions drawn have some 12 basis in practical experience.'" McGinnis v. Royster, 410 U.S. 263, 276 (1973) (quoting South 13 Carolina v. Katzenbach, 383 U.S. 301, 331 (1966)).

14 　　　　　Fryman argues that the state Supreme Court's failure to apply strict scrutiny is contrary to 15 clearly established federal precedent. The United States Supreme Court has held that "[f]reedom 16 from imprisonment—from government custody, detention, or other forms of physical restraint—lies 17 at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 18 690 (2001). Fryman argues that the classification in this case, while ostensibly by date of 19 conviction, affects his fundamental interest in liberty. The classification, Fryman argues, singles out 20 one group of defendants for potentially lifelong imprisonment, while the other, essentially 21 indistinguishable group remain free on probation. Given the magnitude of the fundamental liberty 22 interest at stake, Fryman argues that the classification by date of conviction must be a narrowly 23 tailored measure that furthers a compelling governmental interest.

24 　　　　　While this court is sympathetic to the arguments put forth by Fryman for strict scrutiny, they 25 do not meet the standard of review for habeas petitions. A habeas petition will not be granted unless 26 the state court's approach was "contrary to or an unreasonable application of clearly established 27 federal law as determined by the United States Supreme Court." 28 U.S.C. § 2254(d). Like Fryman, 28 the defendant in Floyd argued that a strict scrutiny standard should apply to the equal protection

8

1  claim because a fundamental interest in liberty was at stake.  See Floyd, 31 Cal. 4th 179 ("[i]n
2  defendant's view, no *compelling* state interest justifies the disparity in treatment) (emphasis added);
3  see also, Petitioner's Brief in Floyd, 2002 WL 1926177 at *15–16 (citing extensively to the Court of
4  Appeal's initial decision in Fryman I, applying strict scrutiny review because a fundamental liberty
5  interest was at stake).  Although the California Supreme Court in Floyd did not engage in an
6  extensive discussion of why strict scrutiny was inappropriate, it is clear that the court rejected a
7  heightened standard in favor of a rational basis test.  Floyd, 31 Cal. 4th at 189–90 (citing with
8  approval analogous Illinois Supreme Court case applying rational basis test).

9       This court agrees with Fryman that it is well established federal law that, as a general
10 proposition, freedom from imprisonment is a fundamental liberty interest protected by the federal
11 constitution.  See e.g., Zadvydas, 533 U.S. at 690 (detention of resident aliens that had been ordered
12 removed beyond 90-day removal period implicated liberty interest); Foucha v. Louisiana, 504 U.S.
13 71, 80 (1992) (continued confinement of insanity acquittee after hospital review committee had
14 reported no evidence of mental illness and recommended discharge implicated liberty interest);
15 Youngberg v. Romeo, 457 U.S. 307, 316 (1982) (involuntary confinement of mentally retarded
16 individual implicated liberty interest); Hydrick v. Hunter, 466 F.3d 676, 700 (9th Cir. 2006) (civil
17 commitment of sex offenders implicated liberty interest).  The court also agrees with Fryman that it
18 is well established federal law that, as a general proposition, heightened scrutiny will be applied
19 when such a fundamental liberty interest is at stake.  Hydrick, 466 F.3d at 700 (citing Skinner v.
20 Oklahoma, 316 U.S. 535, 541 (1942)).

21       None of the cases cited by Fryman, however, involve the denial of an ameliorative
22 sentencing scheme to criminal defendants convicted and sentenced prior to the sentencing scheme's
23 effective date.  That general propositions may be well-established within a given line of cases does
24 not necessarily imply that those propositions are equally valid to a separate and distinct line of cases.
25 The United States Supreme Court has acknowledged that "there is force to [the] argument" that "if a
26 habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot
27 be clearly established at the time of the state-court decision." Yarborough v. Alvarado, 541 U.S.
28 652, 666 (2004).  "Section 2254(d)(1) would be undermined if habeas courts introduced rules not

9

1  clearly established under the guise of extensions to existing law." Id.  "The difference between
2  applying a rule and extending it is not always clear," however, and "[c]ertain principles are
3  fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule
4  will be beyond doubt." Id.

5  Like the defendant in Floyd, Fryman "has not cited a single case . . . that recognizes an equal
6  protection violation arising from the timing of the effective date of a statute lessening the
7  punishment for a particular offense." Floyd, 31 Cal. 4th at 188.  Moreover, while Fryman cites to
8  various liberty interest cases including Zadvydas, Foucha, Youngberg, and Hydrick, he cannot point
9  to any clearly established federal precedent adopting strict scrutiny review based on the timing of the
10 application of a change in sentencing law.  Relying on Zadvydas and the other cases cited by
11 Fryman to reason that the equal protection challenge in this case is subject to strict scrutiny review
12 would require a novel extension of existing federal precedent.  The novelty of such an argument is
13 highlighted by the fact that as the state Supreme Court recognized in Floyd, there exists long and
14 well-established precedent that no constitutional violation occurs by applying a statute only
15 prospectively. Floyd, 31 Cal. 4th at 191 (citing Sperry & Hutchinson Co. v. Rhodes, 220 U.S. 502,
16 505 (1911) ("[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a
17 beginning and thus to discriminate between the rights of an earlier and later time").  Under AEDPA,
18 this court cannot say that the state court's approach of applying a rational basis standard was
19 contrary to or an unreasonable application of well-established federal precedent.

20 Similarly, this court cannot say that in rejecting the equal protection claim, the state court in
21 Floyd applied a rational basis standard in an unreasonable way.  Under a rational basis standard,
22 "legislation is presumed to be valid and will be sustained [against an equal protection challenge], if
23 the classification drawn by the statute is rationally related to a legitimate state interest." City of
24 Cleburne, 473 U.S. at 440.  The California Supreme Court in Floyd noted several reasons why
25 restricting application of Proposition 36 to only those defendants convicted after the initiative's
26 effective date was supported by legitimate state interests, including, to prevent numerous
27 resentencing hearings of defendants who had already been sentenced under the former law, to
28 discourage sentencing delays and other manipulation of the law, to phase in the changes gradually,

1  and to deter defendants from filing meritless appeals simply to delay the time of finality.  Floyd, 31
2  Cal. 4th at 190–91.  In sum, because the state court's determination of the equal protection claim
3  was not contrary to, or an unreasonable application of, clearly established federal precedent, this
4  court cannot grant the habeas petition based on petitioner's equal protection claim.  Accord, Floyd v.
5  Scribner, 2006 WL 2781661 (E.D. Cal. Sept. 22, 2006) (adopting report and recommendation in
6  Floyd v. Scribner, 2006 WL 1049744 (E.D. Cal. Apr. 20, 2006)).

7  II.     Eighth Amendment: Cruel and Unusual Punishment

8        "The Eighth Amendment does not require strict proportionality between crime and sentence.
9  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  Ewing v.
10 California, 538 U.S. 11, 23 (2003).  For purposes of federal habeas review under AEDPA, the gross
11 disproportionality principle is "the only relevant clearly established law amenable to the 'contrary
12 to' or 'unreasonable application of' framework".  Lockyer v. Andrade, 538 U.S. 63, 73 (2003).  A
13 sentence will be found grossly disproportionate only in "exceedingly rare" and "extreme" cases.  Id.
14 Under this proportionality principle, the threshold determination for a court is whether an
15 individual's sentence is one of the rare cases in which a comparison of the crime committed and the
16 sentence imposed leads to an inference of gross disproportionality.  Harmelin v. Michigan, 501 U.S.
17 957, 1005 (1991).  Only if such an inference arises does a court proceed to compare the individual's
18 sentence with sentences in the same and other jurisdictions.  Id.

19       In determining whether the sentence is grossly disproportionate under a recidivist sentencing
20 statute such as California's Three Strikes law, a court looks to whether such an "extreme sentence is
21 justified by the gravity of [an individual's] most recent offense and criminal history."  Ramirez v.
22 Castro, 365 F.3d 755, 768 (9th Cir. 2004); see Ewing, 538 U.S. at 28.  In judging the appropriateness
23 of a sentence under a recidivist statute, a court may take into account the government's interest not
24 only in punishing the offense of conviction, but also its interest "in dealing in a harsher manner with
25 those who [are] repeat[] criminal[s]."  Rummel v. Estelle, 445 U.S. 263, 276 (1980).  The Eighth
26 Amendment does not preclude a state from making a judgment that protecting the public safety
27 requires incapacitating criminals who have already been convicted of at least one serious or violent
28

11

1  crime, as may occur in a sentencing scheme that imposes longer terms on recidivists. See Ewing,
2  538 U.S. at 25 (upholding 25-to-life sentence for recidivist convicted of grand theft).

3      In this case, the court is not satisfied that the record currently before it is sufficiently detailed
4  and specific for the court to make a reasoned decision as to whether the petition should be denied or
5  granted on the basis of petitioner's Eighth Amendment claim. Accordingly, the court **ORDERS**
6  respondent to submit a detailed declaration, supported by exhibits, regarding petitioner's criminal
7  history. The submission should describe not only the offenses for which petitioner was convicted,
8  including the date of the conviction, the sentence imposed and the sentence actually served, but also
9  the underlying facts and circumstances which led to the conviction, insofar as those facts and
10 circumstances can be established. Transcripts of all proceedings in which petitioner entered a plea
11 or was sentenced shall be provided to the court. Moreover, the submission shall clearly distinguish
12 misdemeanor from felony convictions. For the convenience of the court and the parties, materials
13 that duplicate what is already in the existing record shall nonetheless be included in the
14 supplemental submission.

16 CONCLUSION

17     For the foregoing reasons, the petition for writ of habeas corpus is **DENIED** as to the
18 Fourteenth Amendment claim. As to the Eighth Amendment claim, however, the court **ORDERS**
19 respondent to submit further materials as described above. This supplemental submission shall be
20 filed within forty-five (45) days of the date of this order.

22     **IT IS SO ORDERED.**

24 Dated: July 14, 2008

25     MARILYN HALL PATEL
    United States District Court Judge
26     Northern District of California

ENDNOTES

1. <u>See</u> Pet. Exh. C, Gardner Dec. pp 5–6 (explaining that drafters of Proposition 36 were aware that the phrase "convicted" had been given three very different meanings under California case law and that it was the view of the drafters that applying Proposition 36 to persons whose guilty verdict was entered prior to July 1, 2001, but was not yet final on appeal, would be entirely consistent with and would substantially further purposes of Proposition 36).