UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY LEE FRYMAN,<br><br>        Petitioner,<br><br>  v.<br><br>W.A. DUNCAN, Warden, et al.,<br><br>        Respondents.                     / | No. C 05-0156 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Denial of Petition for Writ of Habeas Corpus** |

     Petitioner Tommy Lee Fryman ("petitioner" or "Fryman"), a California prisoner now incarcerated at the Salinas Valley State Prison, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. section 2254. He pled guilty in June 1999 to possession of 1.2 grams of cocaine base and was sentenced in October 1999 under California's Three Strikes law to twenty-five years to life in prison. Petitioner initially raised two constitutional issues in his petition. First, he argued that denying him the benefit of California's Proposition 36 while affording it to others violated the Equal Protection Clause of the Fourteenth Amendment. Proposition 36, which mandates drug treatment and probation in lieu of incarceration, was passed by California voters in 2000, with an effective date of July 1, 2001, while petitioner's conviction was on direct appeal. Second, petitioner argued that his sentence of twenty-five years to life for possession of 1.2 grams of cocaine violates the Eighth Amendment's prohibition against cruel and unusual punishment because the sentence is grossly disproportionate to the offense in relation to petitioner's criminal history.

On July 16, 2008, the court issued an order denying the Fourteenth Amendment claim. Docket No. 38 ("July 2008 Order"). The court did not reach petitioner's Eighth Amendment claims, instead ordering the State to provide certain additional information pertaining to petitioner's criminal history. The state has provided the requested information, and the parties have supplemented their briefing. Having considered the parties' submissions and arguments, the court enters the following memorandum and order.

BACKGROUND

Petitioner Fryman is a fifty-six year old man currently serving a twenty-five years to life sentence. Clerk's Transcripts[1] ("CT") at 296, 343. He has been incarcerated since 1999 as a result of a sentence handed down under California's Three Strikes law. CT 344; *see* Cal. Penal Code § 667 *et seq.* His "triggering" offense was a felony conviction for possession of cocaine base. CT 344. The state court found he had nine prior strikes: a robbery conviction in 1973, a second degree burglary conviction in 1974, and seven strikes for robbery and false imprisonment convictions arising out of a pawn shop robbery in 1981. Docket No. 7, Exh. L; *see also* CT 295. Petitioner has a number of other arrests, misdemeanor convictions, and non-strike felony convictions. CT 310-35.

Petitioner has a long history of drug and alcohol abuse. He started at the age of thirteen with marijuana and moved to heroin at the age of fifteen. CT 297. He began using cocaine at age nineteen and continued with a $150 per day habit until he was twenty-eight, at which point he stopped.[2] CT 297. Petitioner resumed drug use and began drinking copiously after the death of his brother in 1998. CT 297; Docket No. 29, Exh. A (Fryman Dec.) at 2. Petitioner married in 1997 and has a child. CT 298, 302.

The procedural history concerning this petition has been extensively set forth in the court's previous order. *See* July 2008 Order at 3-5.

I. Triggering Offense

On October 31, 1998, based on information passed on by another officer that a drug transaction would take place, an officer of the San Jose police department proceeded to the

2

intersection of Hopkins and Alfred in San Jose. CT 193. While there, the officer saw Fryman on the sidewalk with a woman, Antoinette Long. CT 9-10. When the officer approached, Long attempted to flee by running to a door. CT 193. The officer observed symptoms of stimulant influence in both Fryman and Long and saw an empty baggie with residue fall to Long's feet. CT 194. The officer also observed a white rock, later identified as cocaine, on the ground between Long and Fryman. CT 194. As a result of these observations, the officer arrested both Long and Fryman. CT 194. Both were placed in custody without incident. CT 194.

At the station, another officer informed the arresting officer that Fryman was known for concealing contraband in his buttocks. CT 195. When the officers attempted to perform a strip search, Fryman announced that "nobody would search him." CT 195. During the ensuing scuffle, Fryman was handcuffed and some white tissue paper fell from his buttock area. CT 195. The tissue paper contained three whole pieces and two crushed pieces of cocaine base. CT 197. Fryman claimed he would use the entirety of the cocaine base within the day. CT 296. The "street value" of this cocaine base was approximately twenty dollars per rock, or one hundred dollars total for the five pieces. CT 197.

On June 4, 1999, a jury convicted Fryman of a misdemeanor violation of California Health and Safety Code section 11550 ("use/under the influence of cocaine"). CT 269. The jury was unable to reach a verdict regarding whether Fryman committed a felony violation of California Health and Safety code section 11351.5 ("possession for sale of cocaine"). CT 268, 276. On June 16, 1999, Fryman pled guilty to a felony violation of California Health and Safety Code section 11350 ("possession of cocaine base"). CT 276.

II.  Prior Strikes

    A.  Strike 1

In 1973, Fryman pled guilty to one count of robbery, without any statutory arms enhancement, under California Penal Code section 211. Docket No. 42 (Ruffra Dec.), Exh. 4-E. California Penal Code section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished

3

by means of force or fear." Cal. Penal Code § 211. Fryman wasسentenced to one year in county jail and three years probation. *See* Ruffra Dec., Exh. 4-B. Although Fryman was initially charged with the use of a pistol, this allegation was dropped when Fryman pled guilty. *Compare id. with* Ruffra Dec., Exh. 4-E.

The probation report prepared for Fryman's 1999 sentencing hearing contains the following synopsis of events pertaining to the 1973 robbery:

> [T]he defendant and three others went to a residence inquiring about some "bad dope" they received from a resident. The defendant and his companions continue [sic] to return and were allowed to use the bathroom. One of the companions stole a shotgun and left out the backdoor. The defendant and companions returned a final time with the stolen shotgun and forced the victim on the floor. The defendant and others entered the house with guns and robbed the two other residents. When the defendant was leaving the residence, he placed a gun to the victim's head and stated, "I want to kill this man." The other companions talked him into leaving.

CT 297. It is unclear what the factual predicate for this statement is, as no police report was submitted. According to petitioner, the probation department stated that the report could have been based on anything in the district attorney's files. Docket No. 46 (Pet.'s Supp. Reply) at 6 n.5. Petitioner agrees that the events centered around acquisition of cocaine, but he avers that he never touched the shotgun and that he never intended to hurt anyone. Fryman Dec. at 3.

B.     Strike 2 (So Alleged By Respondents)

In 1974, Fryman pled guilty to one count of second degree burglary under California Penal Code section 459. Ruffra Dec., Exh. 5-D. Section 459 defines as guilty of burglary "[e]very person who enters any . . . apartment[] . . . with intent to commit grand or petit larceny or any felony . . . ." Cal. Penal Code § 459. For this crime, Fryman was sentenced to one year in county jail and three years probation. Ruffra Dec., Exh. 5-F.

The contemporaneously prepared police report provided a summary of the events surrounding the burglary. Residents in an apartment complex called the police when they witnessed a man, later identified as Fryman, open the screen door of a neighboring apartment and peer in. Ruffra Dec., Exh. 5-A. Fryman then picked up a rock and struck the patio door with it. *Id.* When

4

the lights came on in the apartment above, Fryman left. *Id.* Fryman was apprehended as he made his way to the apartment complex entryway. *Id.*

### C. Strikes 3 Through 9

In 1981, Fryman entered a plea of no contest to three counts of armed robbery under California Penal Code sections 211 and 12022(a) and four counts of false imprisonment under California Penal Code section 236, all arising out of the same incident. Ruffra Dec., Exh. 9-B. Penal Code section 12022(a) provides for a sentence enhancement if a firearm is used in the commission of a crime, even if the defendant did not actually use the gun himself. Cal. Penal Code § 12022(a)(1). Penal Code section 236 defines false imprisonment as " the unlawful violation of the personal liberty of another." Cal. Penal Code § 236. For these crimes, Fryman was sentenced to five years in state prison. Ruffra Dec., Exh. 9-F.

These seven strikes arose out of a pawn shop robbery. Fryman and two other co-defendants entered the pawnshop through the rear door. Ruffra Dec., Exh. 9-E. Co-defendant Williams, using a handgun, ordered the two occupants of the pawn shop to lie behind the counter. *See id.*, Exhs. 9-C, 9-E. Williams then handcuffed the two occupants. *Id.*, Exh. 9-E. An officer apprised of the robbery and provided with a description of the three defendants located the three defendants in a vehicle about a quarter mile from the scene. The officer pursued the car in a high-speed chase, after which the defendants fled on foot. Police eventually apprehended Fryman and a co-defendant, who were hiding behind some bushes. Fryman was identified in a "pre-preliminary" examination lineup by one of the victims. *Id.*

### III. Other Criminal History

Fryman has been convicted of several other felonies and misdemeanors. In 1978, he was convicted of felony possession of a weapon. CT 332. In 1980, he was again convicted of felony possession of a concealable firearm. CT 331. In 1987, Fryman was convicted of selling sixty dollars worth of cocaine. CT 328; Ruffra Dec., Exh. 10-A at 6. In 1991, Fryman was convicted of statutory rape. CR 320. In 1997, Fryman was convicted of misdemeanor battery under California

5

Penal Code sections 242 and 243(A). CT 311. Fryman has also committed dozens of vehicle code violations over the years. CT 310-35.

JURISDICTION AND VENUE

This court has subject matter jurisdiction over this action for habeas corpus relief under sections 2254 and 1331 of Title 28 of the United States Code. Venue is proper because the challenged conviction occurred in Santa Clara County, California, within this judicial district. *See* 28 U.S.C. §§ 84 & 2241(d).

EXHAUSTION

Prisoners in state custody who wish to collaterally challenge in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b) & (c). Rule 7(b) of the Rules Governing Habeas Corpus Cases Under Section 2254 permits a federal district court in a habeas proceeding to expand the existing record to include "documents, exhibits, and answers under oath, if so directed, to written interrogatories propounded by the judge. Affidavits may be submitted and considered as part of the record." The presentation of additional facts to the district court, pursuant to the court's direction, does not circumvent the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts. *Vasquez v. Hillery*, 474 U.S. 254, 257-58 (1986); *see generally Townsend v. Sain*, 372 U.S. 293, 310-311 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

Respondents ask the court to reconsider its previous ruling that the new exhibits do not significantly alter the factual basis for the Eighth Amendment claims. *See* July 2008 Order at 5. Respondents argue that the information submitted by petitioner contradicts some of the information presented to the state court. While there are some superficial details which do not align,[3] these

1 details "d[o] not fundamentally alter the legal claim[s] already considered by the state courts." *Vasquez*, 474 U.S. at 260. Accordingly, the court reaffirms its finding that petitioner has exhausted his state judicial remedies.

STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Early v. Packer*, 537 U.S. 3, 8 (2002).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case," *Williams*, 529 U.S. at 413; *see also Woodford v. Viscotti*, 537 U.S. 19, 24-27 (2002) (per curiam), or "extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable," *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002), *see also Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004) (agreeing with the Ninth Circuit that "certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt"). "[A] federal habeas court may not issue the writ simply because that court

7

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

DISCUSSION

Having resolved petitioner's Fourteenth Amendment claim in an earlier order, the sole remaining issue before the court is whether a twenty-five years to life sentence for possession of 1.2 grams of cocaine in light of petitioner's prior criminal history constituted cruel and unusual punishment in violation of the Eighth Amendment.

I.  Federal Law Clearly Established by the Supreme Court

Petitioner was sentenced under California's Three strikes law. *See* Cal. Penal Code § 667 *et seq.* Recidivism statutes are designed

> to deter repeat offenders and at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on the person's most recent offense but also on the propensities he has been convicted of and sentenced for other crimes.

*Rummel v. Estelle*, 445 U.S. 263, 284 (1980). The Supreme Court has consistently upheld the constitutionality of recidivism statutes. In *Rummel*, the Court upheld a Texas recidivist statute against an Eighth Amendment challenge. *Id.* at 276. There, the statute mandated life with the possibility of parole where the petitioner had been most recently convicted of obtaining $120.75 under false pretenses, after prior convictions for fraudulent use of a credit card and check forgery. *Id.* at 285.

In *Solem v. Helm*, 463 U.S. 277 (1983), the Court found that a life sentence without the possibility of parole under the circumstances of that case violated the Eighth Amendment because "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. There, the petitioner was most recently convicted of "uttering a no account" check for

8

$100. *Id.* at 284. This was his seventh non-violent felony; none of the felonies involved crimes against persons; and "alcohol was a contributing factor in each case." *Id.* at 280. The Court set forth three objective factors which should guide courts in their proportionality analysis, "including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 290-91.

In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court upheld a life sentence without the possibility of parole for the offense of possession of 672 grams of cocaine. *Id.* at 996 (plurality opinion). This sentence was based solely on the crime statute itself and not on a recidivist enhancement. Justice Kennedy, joined by Justices O'Conner and Souter, noted that possession of over 650 grams of cocaine "threatened to cause grave harm to society." *Id.* at 1002 (Kennedy, J., concurring).

Most recently, the Court held its Eighth Amendment jurisprudence "clearly established" that a "gross proportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). The Court also cautioned that while the precise boundaries of what constitutes gross disproportionality remain "unclear," it is only "applicable in the exceedingly rare and extreme case." *Id.* (internal quotations omitted). *Andrade* and its companion case, *Ewing v. California*, 538 U.S. 11 (2003), are particularly instructive since both concern application of California's Three Strikes law. In *Andrade*, the Court denied a state habeas petition where the triggering offense was two counts of petty theft of goods totaling $150 in value. 538 U.S. at 66. By virtue of the prior convictions, petty theft, normally a misdemeanor offense, was charged as a felony.[4] *Id.* at 67. The petitioner had incurred three previous convictions for residential burglary as well as a number of misdemeanor violations for theft and marijuana transportation. *Id.* at 66-67. The California Court of Appeal had compared Andrade's criminal record to that of Rummel, and the Court found that the sentence was not contrary to, nor involved an unreasonable application of, the "clearly established gross disproportionality principle." *Id.* at 73. In *Ewing*, the state habeas petitioner's triggering offense was the shoplifting of three golf clubs worth approximately $1,200.

9

538 U.S. at 18. Ewing's prior strikes included three residential burglaries and one robbery as well as several misdemeanors and felony convictions, many of which occurred while the petitioner was serving probation on his prior sentences. *Id.* at 18-19. The Court denied the petition, writing, "in weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism." *Id.* at 29.

II. <u>Ninth Circuit Precedent</u>

Pursuant to the "contrary to" clause of the federal habeas statute, a writ of habeas corpus will not issue unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Yet decisions of the Ninth Circuit are binding on this court to the extent that they provide guidance in applying the principles articulated by the Supreme Court. The Ninth Circuit has examined several Eighth Amendment sentencing cases since 2003. In *Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004), the court found that the petitioner's sentence violated the Eighth Amendment. *Id.* at 756. Ramirez's triggering offense was, similar to Andrade's, petty theft of a VCR worth $199, elevated to a felony charge because of a prior conviction. *Id.* However, unlike Andrade, Ramirez had incurred only two other criminal charges of any sort. Ramirez pled guilty in 1991 to two counts of second degree robbery stemming from other shoplifting charges. *Id.* at 757. Furthermore, the only force used in those prior crimes was when "somebody else drove over the foot of a grocery store security guard, and [when] Ramirez pushed a K-Mart security guard out of his way as he fled the store." *Id.* at 768.

In *Rios v. Garcia*, 390 F.3d 1082 (9th Cir. 2004), the court found that Rios's sentence did not violate the Eighth Amendment. *Id.* at 1088. There, the triggering offense was petty theft of two watches totaling $79.98, elevated to felony charges because of two prior second degree robbery convictions in 1987. *Id.* at 1083. The court distinguished *Rios* from *Ramirez* on the grounds that Rios had struggled with the loss prevention officer, and that Rios' compatriot had used a knife during the prior-conviction robbery. *Id.* at 1086.

10

In *Reyes v. Brown*, 399 F.3d 964 (9th Cir. 2005), the court remanded the habeas petition for further factual consideration by the district court. *Id.* at 965. Reyes's triggering conviction was a felonious perjury statement on a Department of Motor Vehicles application. *Id.* He had only two prior strikes: a juvenile conviction for residential burglary in 1981, and a 1987 armed robbery conviction. *Id.* at 966. The court determined that "but for . . . [the] armed robbery conviction, Reyes would appear to have a plausible cause for relief under *Ramirez*." *Id.* at 969. Because the record on the armed robbery conviction was rather scant, the court remanded the action to determine if Reyes had merely carried a knife or if he had actually used the knife. *Id.*; *see also id.* at 968 n.6. Reyes also had a felony conviction for being under the influence of a controlled substance as well as misdemeanor convictions for Driving Under the Influence (DUI) and battery. *Id.* at 968 n.7. On remand, the district court found that Reyes had used the knife and dismissed the habeas petition. *See Ramirez v. Tilton*, No. ED CV 00-0195-VAP, 2008 WL 5179031, at *9 n.8 (C.D. Cal. Dec. 9, 2008) (recounting subsequent history of Reyes).

In *Taylor v. Lewis*, 460 F.3d 1093 (9th Cir. 2006), the court found that Taylor's sentence did not violate the Eighth Amendment. *Id.* at 1100. Taylor's triggering offense was, similar to the instant action, possession of .036 grams of cocaine base. *Id.* at 1095. His two prior strike convictions, among his many criminal convictions, consisted of a 1980 voluntary manslaughter conviction and a 1986 armed robbery conviction. *Id.* at 1100-01. The court found that the California Court of Appeal was not unreasonable in determining that a possession offense was as serious as a property offense. *Id.* at 1099. Furthermore, in light of Taylor's violent prior offenses, the fact that he had served three prison terms, and the fact that he had previously violated a misdemeanor probation, the court found that Taylor's prior offenses "entailed[ed] considerably more gravity than those the Supreme Court has previously considered." *Id.* at 1100. The court accordingly held the state court's application of federal law to be reasonable. *Id.* at 1101.

In *Nunes v. Ramirez-Palmer*, 485 F.3d 432 (9th Cir. 2007), the court found that Nunes's sentence did not violate the Eighth Amendment. *Id.* at 435. Nunes's triggering conviction was for the shoplifting of $114.40 worth of goods. *Id.* However, he had an "extensive felony record"

11

spanning some sixty years. *Id.* at 440. His prior strikes consisted of a rape conviction in 1945, burglary and theft in 1947, robbery, burglary and felony theft in 1968, felony theft in 1980, and rape in 1982. *Id.* at 436.

In *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir. 2008), the court found that Gonzalez's sentence violated the Eighth Amendment. Gonzalez's triggering offense was his failure to update his sex offender registration within five days of his birthday. *Id.* at 877. Gonzalez had several prior strikes, including 1988 convictions for possession of a controlled substance and auto theft, a 1989 conviction of forcible rape and lewd conduct with a child under the age of fourteen, a 1992 robbery conviction, and a 1999 spousal abuse conviction. *Id.* at 886-87. The court found that failure to register is "entirely passive, harmless and a technical violation of the registration law," and that the sentence received for his failure was up to twenty-one times greater than what he would have received without prior strikes. *Id.* at 886, 889. Furthermore, the court was unconvinced that a recidivist sentence should be imposed when there was no connection between Gonzalez's prior convictions and his current crime of failing to register. *Id.* at 887.

III. Whether Petitioner's Case Leads to an Inference of Gross Disproportionality

Turning to the instant action, the court initially examines whether "the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring).[5] Courts must "weigh the criminal offense and the resulting penalty in light of the harm caused or threatened to the victim or to society, and the culpability of the offender." *Gonzalez*, 551 F.3d at 883-84 (citing *Helm*, 463 U.S. at 292) (internal quotation marks omitted).

A. Gravity of the Triggering Offense

Petitioner was found in possession of about one hundred dollars worth of cocaine base, which he claimed he would use within the day. Personal use and possession of cocaine base is neither violent nor "targeted at another individual." *Reyes*, 399 F.3d at 967. The crime of non-violent drug possession is "one of the most passive crimes a person can commit." *Solem*, 463 U.S. at 296. Yet the Ninth Circuit has noted that California "was entitled to view that possession, use and

12

distribution of illegal drugs represent one of the greatest problems affecting the health and welfare of our population." *Taylor*, 460 F.3d 1098 (quoting *Harmelin*, 501 U.S. at 1002 (Kennedy, J., concurring)) (internal quotation marks omitted).

When petitioner was sentenced in 1999, California Health and Safety Code section 11350 mandated punishment of at least a year in state prison for possession of cocaine base. *See* Cal. Health & Safety Code §§ 11350 & 11054(f)(1). As discussed at length in the July 2008 order, in 2000, California voters approved Proposition 36, codified at California Penal Code section 1210 *et seq.* Under the provisions of Proposition 36, "any person convicted of a nonviolent drug possession offense shall receive probation." Cal. Penal Code § 1210.1(a). To be eligible for probation, any defendant who has previously been convicted of a serious felony must have "remained free of both prison custody and the commission of an offense that results in a felony conviction other than a nonviolent drug possession offense, or a misdemeanor conviction involving physical injury or the threat of physical injury to another person" for a period of five years. Cal. Penal Code § 1210.1(b)(1). In 1997, just over two years prior to his cocaine possession arrest, Fryman was convicted of misdemeanor battery under California Penal Code sections 242 and 243(A); however, as the California Court of Appeal has noted, the conviction itself established only an unlawful touching, which does not necessarily involve injury or an express or implied threat of injury. *People v. Fryman*, 97 Cal. App. 4th 1315, 1324 (2002), *opinion superseded by*, 125 Cal. Rptr. 2d 440 (Cal. 2002) (citing *People v. Longoria*, 34 Cal. App. 4th 12, 16 (1995)).[6] This court assumes without deciding that petitioner would have received probation pursuant to the provisions of Proposition 36 had it been in force at the time of his triggering conviction. That petitioner could only have received probation for his triggering offense but for the timing of his conviction supports a conclusion that petitioner's triggering offense was not a particularly grave crime.[7]

Yet it cannot be said, as in *Gonzalez*, that the offense was an "entirely passive, harmless, and technical violation." *See Gonzalez*, 551 F.3d at 886. While the marginal negative impact of a single act of drug possession may appear negligible when considered in isolation, illegal drugs have a graver and more insidious connection with crime. As Justice Kennedy explained in *Harmelin*, "such

13

drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture." 501 U.S. at 1002. Petitioner's own explanation of his criminal history vividly illustrates the dangers Justice Kennedy identified in *Harmelin*. Petitioner alleges that his drug addiction "controlled [his] life and caused [him] to do things of which [he is] deeply ashamed," Fryman Dec. at 5, that he committed a robbery "head[ing] straight for the cocaine," *id.* at 3, and that he became involved in crime "because of [his] drug habit," *id.* at 2.

### B. Severity of the Penalty in Light of Petitioner's Criminal History

The sentence of twenty-five-years-to-life is one of the harshest sentences available in California, "exceeded in severity only by death and life imprisonment without the possibility of parole." *Gonzalez*, 551 F.3d at 886 (citing *Ramirez*, 365 F.3d at 767). Sentence enhancements for recidivists are justified on the grounds that the state has a "public-safety interest in incapacitating and deterring recidivist felons." *Ewing*, 538 U.S. at 29. But a long prison sentence does not "protect the public when the current offense bears little indication [that the defendant] has recidivist tenancies to commit offenses that pose a risk of harm." *Gonzalez*, 551 F.3d 887 (citing *People v. Carmony*, 127 Cal. App. 4th 1066, 1080 (2005)). Accordingly, to fully ascertain the severity of the sentence, it must be examined in relationship to petitioner's prior criminal offenses.

As a preliminary matter, petitioner claims that respondents have mischaracterized his criminal history. Specifically, petitioner argues that respondents presented non-related transcripts from crimes that were dismissed, *see* Ruffra Dec., Exh. 4-A, arguments regarding underlying circumstances for other convictions that were contradicted in open court, *see id.*, Exh.8-A at 41 *et seq.*, police reports indicating facts never pled to and never charged, *see id.*, Exh. 11-A, and uncorroborated testimony from somewhere in the district attorney's file that was never presented under oath, *see* CT 297; Ruffra Dec., Exhs. 4-A, 4-B. Respondents appear to be trying to show that petitioner deserves his sentence through the use of unproven, unrelated and rather incendiary circumstantial evidence. "As a basis for a sentence of twenty-five-years to possible life in prison . . .

14

these *arrests* are entitled to little or no weight." *Banyard v. Duncan*, 342 F. Supp. 2d 865, 879 (C.D. Cal. 2004) (emphasis added). While the court is allowed to examine the underlying circumstances of *convictions*, *Reyes*, 399 F.3d at 989; *Ramirez*, 365 F.3d at 767, the examination does not, and should not, extend to crimes that were merely charged but where there was no conviction.

Furthermore, one of petitioner's "strikes" as alleged by respondents does not count as a strike for purposes of the Three Strikes law. In 1974, petitioner pled guilty to one count of second degree burglary. California Penal Code section 667, the Three Strikes law section, includes only first degree burglary as a strike felony. *See* Cal. Penal Code §§ 667.5(c)(21) & 1192.7(c)(18). Accordingly, the state court erred in counting petitioner's 1974 conviction as a strike. This error is harmless, since petitioner still had eight other strikes which could form the basis under section 667 for his enhanced sentence.

### i. Prior Strikes

Petitioner has himself averred that all of his prior strikes were acquired in his pursuit for drugs.[8] That alone distinguishes this case from *Gonzalez*, where Gonzalez's failure to register bore no relationship to his prior convictions. Petitioner was arrested with one hundred dollars worth of cocaine base and tested positive for cocaine base. Furthermore, as his wife indicated in her letter to the court, she was unaware that petitioner was once again using drugs, CT 338, perhaps indicating that he might need other sources of funding to support what might once again become an expensive addiction.[9] There is a connection between his current crime and his past crimes insofar as his past crimes were allegedly committed to acquire funds to support his drug habit.

Petitioner was convicted of robbery in 1973 following a guilty plea. He was convicted on seven counts of robbery and false imprisonment in 1981. Petitioner alleges he committed these crimes from a desire to obtain more drugs. Fryman Dec. at 2-3. As petitioner rightly points out, the facts surrounding his 1973 conviction come only from the probation report prepared during the proceedings relating to his 1999 conviction. Respondents have submitted no additional documentation concerning this particular crime although respondents have submitted additional documentation concerning *other* crimes that were charged simultaneously but bear no relation to the

15

facts underlying the robbery charge. *See* Ruffra Dec. ¶ 6 & Exh. 4-A. There is no indication where the probation officer received his information concerning the crime. Because petitioner pled guilty to the crime in 1973, the record was not detailed and it appears that verifiable details regarding the crime have been lost to the sands of time.

Despite the lack of facts regarding this particular crime, it is certain that petitioner was convicted of robbery, which by its statutory definition requires the use of some means of force or fear against another person or in his presence. Cal. Penal Code. § 211. The use of force or fear distinguishes the instant case from *Helm*, where the Court gave little weight to the burglary convictions because they were "nonviolent, none was a crime against a person, and alcohol was a contributing factor in each case." *Helm*, 463 U.S. at 280. None of those mitigating factors apply to Fryman's 1973 strike. Even if this crime sufficed only to provide the statutory basis for the Three Strikes enhancement, petitioner's remaining strike convictions and other convictions support a conclusion that petitioner has led a life of serious crime, including violent crime. Specifically, petitioner was convicted of seven felonies in connection with the 1981 pawn shop robbery. The crime involved the use of a handgun by a co-defendant. In that respect, the instant case is no different from *Rios*, where the Ninth Circuit found that a Three Strikes sentence did not violate the Eighth Amendment in part because a knife was used by a co-defendant during the commission of a prior strike. *See Rios*, 390 F.3d at 1086. Here, a co-defendant used a handgun to threaten other people during the commission of a robbery.

    ii.  <u>Other Criminal Convictions</u>

As distinguished from *Ramirez* and *Reyes*, and similar to *Ewing* and *Andrade*, petitioner has a long and varied criminal history. *See Ramirez*, 365 F.3d at 757 (granting writ to petitioner with only two prior convictions); *Reyes*, 399 F.3d at 966 (same); *Andrade*, 538 U.S. at 66-67 (denying writ to petitioner with numerous felony convictions); *Ewing*, 538 U.S. at 18-19 (same). *But cf. Gonzalez*, 551 F.3d at 886 (granting writ where numerous prior felonies were unrelated to triggering offense); *Helm*, 463 U.S. at 280 (granting writ where numerous prior felonies were non-violent).[10]

16

Petitioner's other criminal history is illustrative if only to show the variety of criminal activities in which he has engaged.

In 1978, petitioner sustained two convictions for possession of a firearm by a felon. In both cases, according to police reports, the firearms—a sawed-off shotgun and a revolver—were partially secreted under the passenger seat in petitioner's car. Petitioner was sentenced to two concurrent terms of three years and, respectively, eight months in state prison. In 1980, petitioner was again convicted of gun possession by a felon in connection with a barroom disagreement over dance partners. Charges of assault with a deadly weapon were dismissed at the prosecution's request. Ruffra Dec., Exh. 8-C. Petitioner was sentenced to two years summary probation, to be served concomitantly with an existing violation of parole. In 1987, petitioner pled guilty to the sale of sixty dollars worth of cocaine, for which he was sentenced to three years in state prison. In 1991, petitioner pled guilty to, and received sixteen months in state prison for, the statutory rape of his fifteen year old girlfriend. As noted, petitioner was convicted of misdemeanor battery in 1997. He has also been convicted of several dozen vehicle code violations.

### iii. Duration and Evolution of Petitioner's Criminal History

Petitioner incurred his penultimate strike in 1981, eighteen years prior to his triggering conviction. While petitioner's subsequent crimes have never again risen to the level of a violent or serious felony within the meaning of the Three Strikes law, he has never also engaged in an extended period of blameless activity. His longest "crime free" time, excluding vehicle code violations, was approximately five years between 1992 and 1997. During that period of time, however, he received approximately ten county jail sentences, ranging from ten days to nine months, for vehicle code violations. CT 310-19. Although this criminal history is not as extreme as the criminal history in *Nunes*, Fryman, like Nunes, remained free of violent crime since the early 1980s but never completely ended his criminal behavior. *See Nunes*, 485 F.3d at 436. Examining petitioner's criminal history as a whole, the picture that emerges is unavailing for petitioner. This is not one of those "extremely rare and extreme cases" in which the sentence imposed violates the Eighth Amendment. *See Andrade*, 538 U.S. at 72.

17

### C. Application of the Standard of Review

Applying the controlling precedents, and in light of petitioner's extensive criminal history which includes one or more incidents of violence, the court finds that petitioner's sentence of twenty-five years to life does not lead to an inference of gross disproportionality. Consequently, no intra- or interjurisdictional analyses are warranted.

As a matter of policy, some may legitimately question whether a twenty-five years to life sentence under a recidivist statute on the facts of this case best serves the public interest. It is worth repeating that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. One may quibble with the Supreme Court's precedents as a matter of policy or penology, but there is no real question that the state courts did not apply clearly established federal law erroneously or incorrectly; much less was the application of the law unreasonable. The controlling case law makes it exceedingly difficult to prevail in a federal habeas court on an Eighth Amendment challenge to a sentence under a recidivism statute.

### CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.

IT IS SO ORDERED.

Dated: January 6, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# **ENDNOTES**

1. Respondents lodged this document and the Reporter's Transcripts ("RT") with the court on June 23, 2005.

2. Although not expressly referenced by either party, petitioner turned twenty-eight the year he pled guilty to the pawn shop robberies, for which he received five years in state prison.

3. For instance, as respondents correctly point out, petitioner originally could not "recall the specific details" of his 1974 conviction. CT 296. In his declaration, however, petitioner presents a different story from that presented in the police report, this one involving a romantic interest. *See* Fryman Dec. at 3. As discussed below, these details are irrelevant to the court's decision.

4. In California, felony theft is a "wobbler" conviction, meaning that it is punishable as either a misdemeanor or a felony. *Ramirez v. Tilton*, No. ED CV 00-0195-VAP, 2008 WL 5179031, at *8 n.7 (C.D. Cal. Dec. 9, 2008).

5. Only where this threshold has been met must the court engage in intra- and interjurisdictional analyses. *See Taylor*, 460 F.3d at 1098 n.7.

6. The California Supreme Court subsequently transferred Fryman's case back to the Court of Appeal, which affirmed his sentence. *People v. Fryman*, No. H020743, 2004 WL 49705, at *1 (Cal. App. Jan. 9, 2004).

7. Petitioner's arguments that Proposition 36 should apply retroactively to him, and that not applying Proposition 36 to him violates Fourteenth Amendment Equal Protection, have already been rejected. *See* July 2008 Order.

8. Petitioner's contention that he should not be punished for his status as a drug addict misses the mark. As the Supreme Court held in *Robinson v. California*, 370 U.S. 660 (1961), it is entirely proper for a person to incur punishment for *conduct* related to, motivated by or resulting from an addiction. *Id.* at 664.

9. The police reports and petitioner's own testimony indicate that he was using cocaine base on the day he was arrested either to celebrate his birthday a few days prior or to assuage his grief over his brother's passing. *Compare* CT 308 *with* Fryman Dec.

10. Petitioner cites to the district court opinions in *Banyard v. Duncan*, 342 F. Supp. 2d 865 (C.D. Cal. 2004), and *Duran v. Castro*, 227 F. Supp. 2d 1121, 1127-1128 (E.D. Cal. 2002). In *Banyard*, the court found that the petitioner's record had been misconstrued by the state court, casting serious doubt on the actual nature of the petitioner's priors. *Id.* at 875. Such is not the case here. In *Duran*, the district court relied extensively on the Ninth Circuit's decision in *Andrade v. Attorney General*, 270 F.3d 743 (9th Cir. 2001), which was subsequently reversed, 538 U.S. 63 (2003).